[No. 15184-1-III.    Division Three.    April 8, 1997.]
THE STATE OF WASHINGTON, *Respondent* v.
ERIKA D. W., *Petitioner.*

*Hugh M. Spall, Jr.*, for petitioner.

*Jeffrey C. Sullivan, Prosecuting Attorney*, and *Lauri M. Boyd, Deputy*, for respondent.

SCHULTHEIS, A.C.J. — Children from the age of 8 and under 12 years of age are presumed incapable of committing a crime. RCW 9A.04.050. Erika W. was charged by information with first degree child molestation. The charge was based on an act of sexual contact with a 6-year-old girl, committed when Erika was 11. In a pretrial hearing, the trial court found that she had the capacity to understand the act charged and that it was wrong. We granted review of the capacity determination and reverse.

During a sleepover sometime from August to December 1994, Erika allegedly touched her friend, A., "[i]n her privates." A., who was six at the time, waited until January 1995 to tell her mother. She first told a neighbor that Erika had touched her on her bottom and on her "private spots." One of the counselors at Erika's and A.'s school contacted Child Protective Services, which then reported the allegation of sexual abuse to the police.

Detective Rod Light contacted A. and her mother in late January. A. told him Erika had touched her sometime in the fall of 1994. She told the officer that Erika had touched her inside her clothes with her fingers. She told another officer that Erika told her not to tell anyone about the touching. Detective Light also interviewed the members of Erika's family. Erika's mother told him Erika and A. had argued in the fall and had not been getting along since then. She also said she had questioned Erika the night before and that she denied she ever touched A. on her intimate parts, even accidentally.

■ In February 1995, Detective Light interviewed Erika at the police station. After she waived her *Miranda*[1] rights,

---

[1] *Miranda v. Arizona*, 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694, 10 A.L.R.3d 974 (1966).

he began taping her statement.[2] Erika denied touching A. on her private parts, except maybe accidentally while she was giving A. a bath. After the officer told her there was a machine that could tell if she was lying, Erika recounted an occasion when she accidentally touched A.'s "private part" as she was helping her put on a tight costume. This touch was outside A.'s underpants. Erika said she felt kind of bad about it and did not mean to do it. She had worried that A. would tell her mom, A.'s mom would argue with Erika's mom, and Erika would get in trouble.

Erika was charged with first degree child molestation, RCW 9A.44.083. Her recorded statement was admitted at the pretrial capacity hearing. Along with A.'s mother and Detective Light, witnesses at the hearing included Erika's fifth grade teacher, her school principal, the neighbor whom A. first told, and one of the neighborhood baby-sitters. Erika's teacher testified that Erika was a good student academically and related very well to the other students. She said that the lower elementary grades studied good touch/bad touch, but she did not know if Erika had taken the courses. In fifth grade, the teacher had taught human sexuality, which covered human development, family, sex roles, friendship, sexual exploitation, the reproductive system and AIDS. She did not discuss actual sexual intercourse unless the children asked her about it.

The trial judge found that Erika was above average in intellectual development, well liked and normal in her social interactions. He found that she appeared to have close parental supervision in her home with appropriate training in the social mores. He also found that she was just a few months away from her 12th birthday when the incident occurred. Erika was over $12^1/_2$ at the time of the hearing. The judge stated that her capacity at this time

---

[2]Erika appeared to have some difficulty understanding her rights at first, so the officer went back over them and explained them to her. Whether her waiver was "intelligently made" pursuant to RCW 13.40.140(9) is relevant to the statement's admissibility at trial. The statement was properly admitted at the capacity hearing. *State v. Linares*, 75 Wn. App. 404, 406-09, 880 P.2d 550 (1994).

was circumstantial evidence of her capacity at the time of the incident. Finally, the judge found that Erika's denial of the sexual contact and explanations for other, accidental, improper touching showed her awareness that touching with sexual intent was wrong, both socially and legally. This evidence was deemed clear and convincing—sufficient to rebut the presumption of incapacity. The court entered findings and conclusions and we granted discretionary review.

The sole issue on appeal is whether the trial court erred in concluding that Erika had the capacity to commit first degree child molestation. Erika contends the State failed to show that she understood the nature of her act or that it was wrong.

■■ A child from the age of 8 and under 12 years of age is presumed incapable of committing any crime. RCW 9A.04.050. This presumption may be rebutted by clear and convincing evidence that the child had sufficient capacity to understand the act and to know that it was wrong. RCW 9A.04.050; *State v. Q.D.*, 102 Wn.2d 19, 26, 685 P.2d 557 (1984); *State v. Linares*, 75 Wn. App. 404, 410, 880 P.2d 550 (1994). On appeal, we must determine if a rational trier of fact could find capacity by clear and convincing evidence. *State v. K.R.L.*, 67 Wn. App. 721, 724, 840 P.2d 210 (1992).

■■ The determination of capacity must be made in reference to the specific act charged and is necessarily fact-specific. *Q.D.*, 102 Wn.2d at 26; *Linares*, 75 Wn. App. at 415. In addition to the nature of the crime, other elements may be relevant in determining whether the child knew the act was wrong: (1) the child's age and maturity; (2) whether the child exhibited a desire for secrecy; (3) whether the child admonished the victim not to tell; (4) prior conduct similar to that charged; (5) any consequences that attached to that prior conduct; and (6) acknowledgment that the behavior is wrong and could lead to detention. *Q.D.*, 102 Wn.2d at 27; *Linares*, 75 Wn. App. at 415; *State v. S.P.*, 49 Wn. App. 45, 47, 746 P.2d 813 (1987), *rev'd*

*on other grounds,* 110 Wn.2d 886, 756 P.2d 1315 (1988).

First degree child molestation requires proof that the offender had sexual contact with a child younger than 12 years old and more than 36 months younger than the offender. RCW 9A.44.083(1). The specific act Erika must have understood is sexual contact, defined as "any touching of the sexual or other intimate parts of a person done for the purpose of gratifying sexual desire of either party or a third party." RCW 9A.44.010(2). Even if we assume Erika learned in school and at home that certain kinds of touching were inappropriate, it is far from clear she knew that one could touch a younger child to gratify sexual desire. There was no testimony that she had learned anything about sexual desire—a sophisticated concept for a preadolescent. Without such testimony, the evidence is not clear or convincing that Erika understood the nature of the act.[3]

■■ Additionally, the evidence is not sufficient to show that Erika knew her conduct was legally wrong. Her recorded statement reveals nothing more than her attempts to remember something that could have been interpreted as improper touching. It is not unreasonable for a child suspect to feel guilt simply because he or she is being formally questioned by the police. The relevant question is whether Erika understood the gravity of her conduct.

---

[3]Erika cites two cases regarding the capacity of a developmentally disabled person to consent to sexual intercourse: *State v. Ortega-Martinez,* 124 Wn.2d 702, 881 P.2d 231 (1994) and *State v. Summers,* 70 Wn. App. 424, 853 P.2d 953, *review denied,* 122 Wn.2d 1026 (1993). The mental capacity defense to rape requires consideration of the definition of mental incapacity found in RCW 9A.44.010(4): "[T]hat condition existing at the time of the offense which prevents a person from understanding the nature or consequences of the act of sexual intercourse whether that condition is produced by illness, defect, the influence of a substance or from some other cause." *Ortega-Martinez* held that the defendant must show that the mentally retarded victim understood the nature and consequences of sexual intercourse when he or she consented. This understanding requires more than a knowledge of the mechanics of reproduction. The defendant supports this defense with evidence that the victim/consenter understood such consequences as pregnancy, disease, emotional intimacy and disruption in established relationships. *Ortega-Martinez,* 124 Wn.2d at 711-12. These cases are inapposite to the issue of the capacity of a child charged with molestation.

*K.R.L.*, 67 Wn. App. at 726. As noted in *Linares*, 75 Wn. App. at 414 n.12, the State carries a greater burden when it has to prove a child appreciates the illegality of certain sexual acts. The element of sexual desire in child molestation makes it one of those sexual acts requiring a higher degree of proof.

In short, the evidence in this case sheds little light on Erika's understanding of the nature of her alleged act or its legal consequences. Consequently, we find that the State failed to rebut the presumption of incapacity with clear and convincing evidence. *Q.D.*, 102 Wn.2d at 26.

Reversed and dismissed.

KURTZ, J., and MUNSON, J. Pro Tem., concur.