[Nos. 5165–1; 5166–1. Division One. January 2, 1979.]

*In the Matter of the Welfare of*
LANDI YETTER.

*Miracle, Pruzan & Nelson* and *Steven R. Pruzan*, for appellant.

*Slade Gorton, Attorney General, Michael T. Mitchell, Assistant*, and *Peter D. Jarvis*, for respondent.

FARRIS, C.J.—Verna Joe Sprague appeals the trial court's order that her twin daughters, Lindi and Landi Yetter, be placed in the permanent care of the Department of Social and Health Services pursuant to RCW 13.04.010.

On October 26, 1976, the trial court entered an order permanently depriving Sprague of any and all parental rights in her twin daughters. The order was appealed and we heard argument on January 27, 1978, resulting in a remand of the cause to the Superior Court for additional findings of fact with regard to

whether petitioner, because of her age, is now able to accept the responsibility of becoming a good parent with the assistance of the public and private resources available in the community. *See In re May,* 14 Wn. App. 765, 545 P.2d 25 (1976).

The trial court conducted the hearing on March 20 and 21, 1978. Findings of fact were entered answering the question in the negative.

The allegations of dependency are not in substantial dispute. The children were born on September 12, 1974. Since that date, the natural parents have married and divorced.[1] Sprague subsequently remarried and a child born of that union died in infancy, presumably of crib death.

In January of 1975, the twins were admitted to the University of Washington hospital for treatment as a result of parental neglect. The record shows that the health of the twins was extremely poor and would have deteriorated further without immediate state intervention. In February 1975, the twins and their parents were referred to DSHS, Children's Protective Services, for additional counseling and in–home services. Between February and May of 1975, social workers and homemakers visited the twins and their parents. On May 1, 1975, the children were placed in a foster home and remained there until August 4, 1975, when they were returned to their natural parents. Sprague again failed to implement proper child caring practices or demonstrate the emotional or intellectual capacity to care properly for the twins. Accordingly, they were again removed on August 28, 1975, and placed in a different foster home where they presently reside. The appeal questions whether there has been an adequate showing that the mother is incapable now or in the reasonably foreseeable future of assuming the care and custody of the twins.

 Parental interest in the custody and control of minor children is of the utmost importance but the primary concern on review is the welfare of the child. *In re Sego,* 82

---

[1]The natural father's interest in the children has been terminated without appeal.

Wn.2d 736, 513 P.2d 831 (1973). Each case must be determined on its own facts, *In re Becker,* 87 Wn.2d 470, 477, 553 P.2d 1339 (1976); however, when the rights of parents are in conflict with the welfare of the child, the child's welfare must prevail. *Todd v. Superior Court,* 68 Wn.2d 587, 591, 414 P.2d 605 (1966).

Sprague's rights as a natural parent were given a high degree of deference by the trial court. Extensive evidence of psychological and emotional evaluations was gathered to determine Sprague's parental fitness for 2 years prior to the deprivation. Social assistance was provided to allow her ample opportunity to parent her children. Despite the medical and social services made available, she made no appreciable progress in increasing her parenting ability. Several experts testified that the children, if returned to Sprague, would be subjected to a living environment that could prohibit their physical and emotional development. The record also shows that Sprague has a very tenuous emotional relationship with her children. In her testimony, she predicted that it might take well over a year before the children could readjust to her.

■ The duty of this court is not to weigh the evidence or evaluate the credibility of witnesses, but rather to decide whether the necessary proof exists to support the trial court's findings of fact and order of permanent deprivation. *In re Kier,* 21 Wn. App. 836, 587 P.2d 592 (1978). We have carefully reviewed the record and find that the trial court's finding that

> [t]he natural mother is found not to be capable of meeting the special needs of Lindi and Landi Yetter at this time or in the reasonably foreseeable future,

supplemental finding of fact No. 3, and its order of permanent deprivation are supported by clear, cogent and convincing evidence as required by *In re Kier, supra.*

■ Some would maximize the adverse effects of physical abuse and minimize the adverse effects of neglect. Consistent inaction by a parent, however, when affirmative action is mandatory can be at least as detrimental to a child as

active physical abuse. The State, under scrutiny of the court, need not wait until a child's life has been permanently and irretrievably impaired before acting.

The prolonged foster care of the children, the amount of rehabilitative services already unsuccessfully rendered to their mother, and the expert opinion that the mother's emotional limitations will prevent her from becoming a fit parent in the reasonably foreseeable future, all confirm that the trial court acted within its authorized discretion in ordering permanent deprivation. *In re Hudson,* 13 Wn.2d 673, 700, 126 P.2d 765 (1942).

We understand the mother's argument that she might have been able to show her ability to parent had the child born of her subsequent marriage lived. We recognize that while there is no allegation of her neglect of that child, the child died at age 3 months. This unfortunate event is not a basis to set aside the trial court's findings of fact.

Affirmed.

ANDERSEN and DORE, JJ., concur.

Reconsideration denied March 8, 1979.

Review denied by Supreme Court June 1, 1979.